# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY ANGELO MENDOZA, | Case No.  1:25-cv-00587-KES-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| RUBACAVA, et al., | (ECF Nos. 14, 16) |
| Defendants. | **FOURTEEN (14) DAY DEADLINE** |

### I.    Background

Plaintiff Ricky Angelo Mendoza ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On February 11, 2026, the Court screened Plaintif's first amended complaint and found that Plaintiff stated a cognizable claim against Defendant Ruvalcaba for failure to protect in violation of the Eighth Amendment arising from the incident on November 23, 2024, but failed to state a cognizable claim against any other defendant.  (ECF No. 15.)  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claim identified by the Court.  (*Id.*)  On March 13, 2026, Plaintiff notified the Court that he does not wish to amend his complaint and is willing to proceed only on the cognizable claim against Defendant Ruvalcaba.  (ECF No. 16.)

1

**II.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Mos*s, 572 F.3d at 969.

**A.  Plaintiff's Allegations**

Plaintiff is currently housed at the California Correctional Facility in Tehachapi, California, where the events in the complaint are alleged to have occurred.  Plaintiff names the following defendants in their individual capacities: (1) Correctional Officer Adrian Ruvalcaba; (2) Warden Brian Cates; and (3) Captain Eric Barthelmes.

Introductory Allegations

In his introductory allegations, Plaintiff asserts that defendants knew there was continued violence between prisoners on 4B, between a STG 25er prison gang and non-affiliated inmates.

There had been numerous assaults and riots, and the violence affected all inmates, even those not involved in violence. The warden ordered lock downs and an emergency PSR to attempt to stop the violence. In the PSR, the warden ordered that the STG 25ers were to be kept separated from the population. Plaintiff asserts that the PSR is an order signed by Warden Cates and Facility Captain Barthelmes that prison officials are to follow.

On November 23, 2024, Plaintiff, who was a kitchen worker, was let out of his cell to go to work at 12:30 p.m. Defendant Ruvalcaba, who was working in the unit control tower in unit 1, knew that the STG 25ers were out on the yard for the afternoon medical line. He knew this because before they are released from their units, it is announced over the radio to lock down all other inmates. There is to be no movement until after the STG inmates are back in their cells. The order is on the PSR that all staff are given so they all know what is expected for that day. Defendant Ruvalcaba, knowing that, still let Plaintiff out of the cell and out the front door. As Plaintiff walked about eight to ten feet, he saw inmates later identified as the 25ers at the pill line. They began whooping, which is their way of announcing they are 25ers, and then they ran towards Plaintiff. One of the officers at the pill line radioed to Defendant Ruvalcaba to pull Plaintiff back inside, which Plaintiff learned later, but it was too late. The 25ers were on Plaintiff fast and began punching him. There were three inmates assaulting Plaintiff. He did not know until later that they had stabbed him in the back area.

Defendant Ruvalcaba was at the front window of the unit that looks out to the yard. He had a clear line of sight to see the STG gang members at the pill line, yet he still let Plaintiff walk out of the unit knowing the 25ers were assaulting any inmates they came in contact with out on the yard. Plaintiff alleges that Defendant Ruvalcaba cannot deny "he was [aware] that he was not to let Plaintiff out the door, because its [sic] on the PSR that the warden ordered, and the fact that . . . Officer Silva radioed to Ruvalcaba to pull Plaintiff back inside, is obvious that staff knew they were not suppose [sic] to release any inmates while the STG 25ers were out on the yard." (ECF No. 14 at 8.) Plaintiff alleges that "these defendants" deliberately placed his life in danger, violating the Eighth Amendment of the Constitution. (*Id.*)

///

3

Additional Factual Allegations

Plaintiff alleges that on November 23, 2024, at about 12:00 p.m., Defendant Ruvalcaba opened Plaintiff's cell door for work.  Plaintiff was in Cell 202 in 1Block or Unit.  Plaintiff had been assigned to the kitchen for about two years at this time.  His work hours were from 12:30 to 3:30 p.m.  When Plaintiff came out of the cell, he saw Defendant Ruvalcaba up in the control booth tower.  Defendant Ruvalcaba opened the section door that leads to the front of the unit and leads to the front door that opens up to the yard.  As Plaintiff was walking to the front door, it was opening up so he could walk out to the yard.  Plaintiff walked out of the unit and began his walk towards the yard and was at the grass area when he saw the inmates at the pill line and they also saw Plaintiff.  They began whooping and yelling, which is what they do to identify themselves to everyone.  Plaintiff realized that they were STG 25ers, a SNY prison gang.  They were not supposed to be out when other inmates are out on the yard.  They are restricted from any contact with inmates, like Plaintiff.  When Defendant Ruvalcaba let Plaintiff out of the unit, Plaintiff thought defendant was aware of who was on the yard, and it was ok to let Plaintiff go to work.  The 25ers began running towards Plaintiff, there were about ten of them.  As they got closer, most of them stopped at the pull up bars, and only three kept running towards Plaintiff.  The officers at the pill line yelled for them to stop and get down, but it was too late.  The 25ers were on Plaintiff very fast and began assaulting him with their fists and weapons.  There was nothing that Plaintiff could do because it happened so fast, but he tried to defend himself.  Plaintiff was knocked to the ground and the three inmates continued to assault him.  The officers at the pill line ran over and one of them threw a tear gas bomb and told everyone to get down.  Everyone complied and proned out in front of housing unit one.  The pill line officers handcuffed everyone and escorted them to the yard cages.  Plaintiff was taken to the Ad Seg Cage (IEM), Cell 21.  Sgt. Patricio saw that Plaintiff was bleeding in the back as they walked to the cages and informed Plaintiff.

Plaintiff was taken to the Medical Clinic TTA to be examined.  While in TTA, the ISU squad came in and interviewed Plaintiff and took pictures of the stab wounds.  Plaintiff was then transported to Bakersfield Adventist Hospital, where he was examined and had staples placed

4

over the wounds.  Plaintiff stayed at the hospital for about seven or eight hours before being taken back to prison.  Plaintiff was taken to TTA again and asked some questions.  He was then sent back to his unit and cell.  Plaintiff could barely walk and was in a lot of pain in his back.

The next morning, Sgt. Mumby called Plaintiff to his office and interviewed him about the incident.  When Plaintiff walked into the office, Sgt. Mumby and Sgt. Pratt were in the office waiting for him.  Sgt. Mumby asked Plaintiff if he had any safety concerns and if he could stay on the yard.  Plaintiff told them that he could stay on the 4B yard.  Plaintiff was asked to sign a waiver saying that he was not asking for safety concerns.

The next day, Plaintiff sent a request to medical asking to be seen and to have the bandages cleaned.  After that, Plaintiff was regularly called to TTA to have the wound cleaned and rebandaged.  About a week later, they removed the staples from his back, but the pain in his back continued to be constant.  Plaintiff was referred to physical therapy and saw the doctor to see if there was any nerve damage.  Plaintiff was on medication for a week and could hardly walk without serious pain.

Failure to Search STG Inmates

Plaintiff alleges that the officers assigned to Unit 7 were supposed to search and run a metal detector over the STG inmates before releasing them for medication line.  They failed to do so and allowed the 25ers to walk to the pill lie with the weapons that they used on Plaintiff. Defendants Cates and Barthelmes both had signed the order on the PSR that the STG 25ers in that unit were to be searched and wanded for weapons.  That order was ignored by the Unit 7 officers. The inmates in Unit 7 were all classified as keep aways from all other inmates because of the continued assaults and incidents.

Defendants Cates and Barthelmes signed the PSR.  These defendants were well aware of the seriousness of the problems caused by the inmates in housing Unit 7.  That is why they made orders for all CCI staff to ensure that the STG inmates do not mix with the rest of the population. These defendants knew that there was serious problem with these inmates and they could not prevent the constant incidents, so they had made arrangements to transfer all the STG inmates, but in the meantime had to separate them from all other population inmates.  Plaintiff alleges that

5

it is the responsibility and duty of the Warden and Captain to ensure that their officers are following the orders of the PSR to keep gang members away from the rest of the inmates. Plaintiff contends, therefore, that on November 23, 2024, when there had been over a year of riots and assaults related to the STG 25ers, all staff were aware of the threat and need for tight security. Yet, Defendant Ruvalcaba, knowing this and being told over the radio to put Plaintiff back inside the unit before he could be assaulted, failed to do anything to protect Plaintiff.  Defendant Ruvalcaba stood at the window of Unit 1 and watched Plaintiff being assaulted and did nothing.

Plaintiff contends that Defendants Cates and Barthelmes are as much as fault for the pain and mental anguish and trauma that Plaintiff has endured as Defendant Ruvalcaba.  Plaintiff alleges that he still has nightmares and wakes in the night in cold sweats because of the assault. Plaintiff further alleges that Defendants Cates and Barthelmes failed in their responsibility to see that Defendant Ruvalcaba was properly trained.  They set the training and policies and procedures that Defendant Ruvalcaba should have followed, but he almost got Plaintiff killed.

As relief, Plaintiff seeks compensatory and punitive damages, along with a declaratory judgment.

### B. Discussion

#### 1. Eighth Amendment - Failure to Protect

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer*, 511 U.S. at 832. In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health

6

or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. Mere negligent failure to protect an inmate from harm is not actionable under Section 1983. *See Farmer*, 511 U.S. at 835.

Plaintiff alleges multiple claims against Defendant Ruvalcaba, all of which arise out of the alleged failure to ensure Plaintiff's safety, deliberate indifference, and failure to protect him from assault on November 23, 2024. (ECF No. 14 at 15-16.) The Court construes these claims as an asserted violation for failure to protect Plaintiff from harm in violation of the Eighth Amendment. Liberally construing the allegations, Plaintiff's first amended complaint states a cognizable claim against Defendant Ruvalcaba for failure to protect Plaintiff from harm in violation of the Eighth Amendment arising from the incident on November 23, 2024.

However, as currently pled, Plaintiff's first amended complaint fails to state a cognizable claim for failure to protect against Defendants Cates and Barthelmes. Plaintiff fails to adequately allege that these defendants knew of a specific risk of harm to Plaintiff on November 23, 2024, when he was released from his cell by Defendant Ruvalcaba to report to work in the kitchen, and failed to reasonable steps to prevent the harm.

Further, to the extent Plaintiff is attempting to assert any claims against the Unit 7 officers for their alleged failure to search STG 25ers for weapons on November 23, 2024, he fails to state a cognizable claim for failure to protect. There are no allegations indicating that, in light of the PSR requiring separation, Unit 7 officers knew that the failure to search the STG 25ers posed a substantial risk of harm to Plaintiff on November 23, 2024. There are no allegations indicating that the defendants knew that Plaintiff would be released for work in the kitchen while STG 25ers

were on the pill line that day.

## 2. Supervisory Liability

Plaintiff seeks to impose liability on supervisory personnel, including Defendants Cates and Barthelmes.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

Here, Plaintiff has not alleged that the supervisory defendants, Cates and Barthelmes, participated in or directed the violation of his rights related to the incident on November 23, 2024. Plaintiff also has not adequately alleged that these supervisory defendants implemented a policy so deficient that it was the moving force of any constitutional violation.  Rather, Plaintiff alleges that the incident at issue resulted from the actions or omissions of various correctional officers—in failing to search inmates and/or failing to maintain the separation contemplated by the PSR ordered by Defendants Cates and Barthelmes—not as a result of any prison policies.  Indeed, according to Plaintiff's allegations, Defendant Cates ordered lockdowns and issued the PSR in conjunction with Defendant Barthelmes to separate the STG 25ers from the remainder of the prison population to attempt to stop the violence.  (ECF No. 14 at 1.)  Plaintiff does not allege that the emergency lockdowns or the PSR were deficient, such that they were the moving force of any constitutional violation.

///

### 3. Failure to Train/Supervise

Plaintiff also forwards claims against Defendants Cates and Barthelmes based on their alleged failure to adequately train and supervise Defendant Ruvalcaba. (ECF No. 14 at 16-17 [Causes of action 6 and 7].) A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

"Mere negligence in training or supervision" is insufficient. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

Here, Plaintiff's amended complaint fails to state a cognizable claim based upon a theory of failure to train or supervise Defendant Ruvalcaba or any other staff. There are no factual allegations demonstrating that Defendants Cates and Barthelmes were deliberately indifferent to a need for more or different training, which would have resulted in Defendant Ruvalcaba or any other staff member maintaining separation between Plaintiff and the STG 25ers on the pill line or prevented STG 25ers from possessing weapons on the pill line. There is no indication from Plaintiff's amended complaint that the need for more or different training or supervision was obvious and likely to result in a constitutional violation. Further, Plaintiff has alleged only an isolated incident, not a pattern of similar constitutional violations by untrained employees.

### 4. Declaratory Relief

To the extent Plaintiff's amended complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of*

9

*Lakewood Village*, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### III.    Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint, filed on February 6, 2026, states a cognizable claim against Defendant Ruvalcaba for failure to protect in violation of the Eighth Amendment.  However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.  Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's first amended complaint, filed on February 6, 2026, against Defendant Ruvalcaba for failure to protect in violation of the Eighth Amendment arising from the incident on November 23, 2024; and

2.  All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  Plaintiff is advised that failure to file objections within the

///

///

specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 16, 2026**            /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE

11